UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL W. GOLDEN,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., its successors and/or assigns; AMERICAN MORTGAGE NETWORK, INC., its successors and/or assigns; U.S. BANK NATIONAL ASSOCIATION, as Trustee for J.P. Morgan Mortgage Trust 2007-S2; and SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendants. | Case No.: 16-cv-1209-BTM(JMA)<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND DENYING MOTION TO STRIKE AS MOOT**<br><br>**[ECF NOS. 35, 36]** |

Defendants U.S. Bank National Association ("U.S. Bank"), as trustee for the JPMorgan Mortgage Trust 2007-S2 and Select Portfolio Servicing Inc. ("SPS") have filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") as well as a motion to strike portions of the FAC. (ECF Nos. 35, 36.) Defendant JPMorgan Chase Bank, N.A. ("JPMorgan Chase") has joined the motion to dismiss. (ECF No. 37.) For the reasons discussed below, the Court will grant Defendants' motion to dismiss and deny their motion to strike as moot.

## I. BACKGROUND

Plaintiff Daniel W. Golden, who is proceeding pro se, filed this foreclosure relief action on May 19, 2016. His original complaint stated eight claims under federal and California state law, and named two defendants, JPMorgan Chase and American Mortgage Network, Inc. ("AMN"). (ECF No. 1.) Default was entered as to JPMorgan Chase on August 3, 2016,[1] and as to AMN on September 6, 2016. (ECF Nos. 11, 15, 16.) On January 11, 2017, the Court granted JPMorgan Chase's motion to set aside the default. (ECF No. 22.)

On February 17, 2017, Plaintiff filed a First Amended Complaint ("FAC") naming AMN, JPMorgan Chase, U.S. Bank, and SPS as defendants. (ECF No. 28.) Plaintiff alleges that on February 15, 2007, he executed a promissory note ("Note") in the amount of $1,000,000.00 secured by a deed of trust ("DOT") on real property located at 21360 Crestwind Drive, San Marcos, CA 92078 (the "property"). FAC at 2, 7. The DOT identifies AMN as the lender, First American Title Insurance Company as trustee, and names Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary and AMN's nominee. FAC Ex. A.

Plaintiff alleges Defendants and other unknown entities were involved in an attempt to securitize his loan into the JPMorgan Mortgage 2007-S2 Trust (the "2007-S2 Trust"). FAC at 8, 10. On September 5, 2012, a Corporate Assignment of Deed of Trust was executed, pursuant to which MERS, as nominee for AMN, assigned all beneficial interest in the DOT to U.S. Bank as trustee of the 2007-S2 Trust. FAC Ex. C. Plaintiff alleges the pooling and service agreement ("PSA") applicable to the 2007-S2 Trust required loans to be assigned or transferred to the trust no later than the trust closing date of May 30, 2007, and that the assignment of the DOT was not effective because it took place after the closing date of the

---

[1] The August 3rd default should have been entered as to Chase only, but was inadvertently entered as to both Chase and AMN. The Court therefore set aside the August 3rd entry of default as to AMN. The clerk properly entered AMN's default on September 6th. (ECF Nos. 11, 15.)

2

2007-S2 Trust. FAC at 9-10. He also alleges that U.S. Bank violated the PSA by failing to deposit endorsed promissory notes, the original DOT, and an assignment of the Note with the custodian of records of the 2007-S2 Trust. Id. at 10.

Plaintiff further contends that under California law, the note and mortgage are inseparable, and that while assignment of the note "carries the mortgage with it" assignment of a deed of trust alone is a "nullity." Plaintiff alleges he reviewed records of the San Diego County Recorder's Office and found no evidence of a recorded "Assignment of Note," and concludes from this that his Note was never assigned to U.S. Bank. FAC at 11. He alleges that in light of the foregoing California authority against "splitting" the mortgage from its security interest, the fact that only the DOT, but not the Note, was assigned to U.S. Bank is an additional defect that renders the assignment of the DOT to U.S. Bank invalid. Id. Alternatively, he alleges the Note was transferred to U.S. Bank, but the transfer occurred after the closing date of the 2007-S2 Trust and was therefore ineffective. See id.

Plaintiff acknowledges that in 2013, he "suffered a financial hardship which caused him to fall behind in his mortgage payments." FAC at 8. He attempted to negotiate a loan modification with Chase, then the servicer of his loan, but a modification was never approved. Id. at 9. On September 13, 2013, he received notice that the servicing of his loan was being transferred to SPS as of October 1, 2013. Id. at 12 & Ex. E. He thereafter tried to make payments to SPS, but SPS refused to accept them. Id. at 9.

Plaintiff alleges that "[s]ince 2014" he sent SPS several letters in an effort to discover the beneficiary of his debt obligation, and was repeatedly told the beneficiary was U.S. Bank. FAC at 12. He alleges the lack of a recorded Assignment of Note casts doubt on the veracity of this response. Id.

On October 11, 2014, a Substitution of Trustee was executed by SPS as servicing agent and attorney-in-fact of U.S. Bank, naming The Wolf Law Firm as

1 trustee under the DOT. FAC Ex. D. Plaintiff alleges this substitution was invalid because it was signed by SPS rather than U.S. Bank. FAC at 12. He also claims the underlying defects in the assignment of the DOT to U.S. Bank rendered U.S. Bank incapable of substituting The Wolf Law Firm as trustee. Id.

On July 10, 2015, The Wolf Law Firm conducted a foreclosure sale, and JP Morgan Chase purchased the property. FAC Ex. F. Plaintiff alleges the foreclosure sale was invalid since The Wolf Law Firm "was not the proper and legal trustee … due to the invalid Substitution of Trustee." Id. at 13. He also alleges that since the transfer of the DOT to U.S. Bank as trustee of the 2007-S2 Trust was invalid, all payments he made on his loan during the time it was purportedly part of the 2007-S2 Trust must be disgorged, and the wrongful foreclosure must be reversed. Id.

Plaintiff states claims for declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, wrongful foreclosure, violation of 15 U.S.C. § 1692e (the Fair Credit Reporting Act), violation of 15 U.S.C. § 1641(g) (the Truth in Lending Act), quasi contract, negligence, violation of California Business & Professions Code § 17200, quiet title, breach of contract, breach of the implied covenant of good faith and fair dealing, accounting, and violation of the California Homeowners' Bill of Rights, Civil Code §§ 2924.27 and 2924(a)(6). He seeks general and special damages, punitive damages, as well as injunctive and declaratory relief.

On April 5, 2017, U.S. Bank and SPS filed motions to dismiss the FAC in its entirety and to strike the FAC's prayer for punitive damages. The same day, JPMorgan Chase filed a notice of joinder to the motion to dismiss. Plaintiff has not opposed the motions.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). Only a complaint that states a "claim to relief that is plausible on its face" will survive a

Rule 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although detailed allegations are not required, the complaint's factual allegations "must be enough to raise a right of relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2).

When reviewing a motion to dismiss, the complaint's allegations of material fact are taken as true and construed in the light most favorable to plaintiff. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A pro se plaintiff's pleadings are liberally construed when evaluated under the standards of Twombly and Iqbal. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). In ruling on a motion to dismiss, the court may consider exhibits incorporated by reference in the complaint, and matters subject to judicial notice, without converting the Rule 12(b)(6) motion into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986).

Under this District's Local Rules, failure to file an opposition to a motion "may constitute consent to the granting of a motion…." CivLR 7.1.f.3.c. However, even when a motion is unopposed, the Court reviews it on the merits to determine whether there is good cause to grant it. Fry v. Wachovia Mortg. FSB, No. 09cv2662-L(NLS), 2010 U.S. Dist. LEXIS 95634, at *2 (S.D. Cal. Sept. 13, 2010).

//
//

## III. REQUEST FOR JUDICIAL NOTICE

In connection with their motion, Defendants have filed a request for judicial notice ("RJN") of 16 documents. See RJN (ECF No. 35-3), Exs. A-P. The RJN is unopposed.

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of matters of public record as well as documents incorporated by reference into the complaint. Lee, 250 F.3d at 689. The Court may take judicial notice of the contents of documents incorporated by reference into the complaint. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). However, the scope of judicial notice of other documents extends only to the existence of the documents, and not to any disputed facts they contain. Id.

Here, the Court grants the RJN as to Exhibit C (Corporate Assignment of Deed of Trust), which is already incorporated as an exhibit to the FAC. See FAC Ex. C. The Court also grants the request as to Exhibits D (Notice of Default and Election to Sell Under Deed of Trust) and E (Notice of Trustee's Sale), both which are public records filed with the San Diego County Recorder's Office.

Exhibits A and B are copies of quitclaim deeds. The first is dated February 14, 2007, and purports to quitclaim to "Daniel W. Golden, an unmarried man," all interest in the property held by "Daniel W. Golden, trustee of the Daniel W. Golden living Trust." RJN Ex. A. The second is also dated February 14, 2007, except that it purports to quitclaim to "Daniel W. Golden, trustee of the Daniel W. Golden living Trust," all interest in the property held by "Daniel W. Golden, an unmarried man." RJN Ex. B. Both documents were recorded with the San Diego County Recorder's Office and are matters of public record. The Court grants the RJN as to Exhibits A and B.

Exhibits F and G are copies of grant deeds that Plaintiff apparently recorded with the San Diego County Recorder's Office after the foreclosure on the property. See RJN Ex. F (grant deed recorded July 21, 2015, reflecting a transfer of the

1  property by "Daniel W. Golden" to himself, Rosario M. Ulloa, and Jorge
2  Hernandez); RJN Ex. G (grant deed recorded February 17, 2016, in which "Daniel
3  W. Golden" purports to grant the property to Robert W. Sedlar). Exhibits H through
4  J are copies of documents relating to an unlawful detainer action that JP Morgan
5  Chase brought against Plaintiff. See RJN Ex. H (docket from action captioned <u>JP
6  Morgan Chase Bank NA v. Golden</u>, San Diego Superior Court Case No. 37-2015-
7  32812-CL-UD-NC,); Ex. I (complaint); Ex. J (writ of possession of real property).
8  Exhibits K through P are copies of documents relating to various bankruptcy
9  matters involving Plaintiff. See RJN Ex. K (docket in matter captioned <u>In re Daniel
10 Golden</u>, U.S. Bankr. Ct., C.D. Cal., Case No. 2:15-bk-15112-BK), Ex. L (order of
11 dismissal filed in the same case), Ex. M (involuntary Chapter 7 bankruptcy petition
12 filed in <u>In re Daniel Golden</u>, U.S. Bankr. Ct., C.D. Cal., Case No. 2:16-bk-11153-
13 BR), Ex. N (order of dismissal filed in the same case), Ex. O (docket from
14 bankruptcy matter captioned <u>In re Daniel Golden</u>, U.S. Bankr. Ct., S.D. Cal., Case
15 No. 16-00783-LA13), Ex. P (order of dismissal filed in same case). As the Court
16 does not rely on Exhibits F through P in ruling on Defendants' motion, it denies
17 Defendants' RJN as to those exhibits as moot.

## IV. DISCUSSION

Defendants advance a number of arguments in favor of their contention that the FAC fails to state a plausible claim for relief. The Court agrees and will grant the motion to dismiss under Rule 12(b)(6).[2]

---

[2] In addition to moving under Rule 12(b)(6), Defendants also seek dismissal of the FAC for failure to join an indispensable party under Rule 12(b)(7). Their argument is based on RJN Exhibit B, in which Plaintiff apparently quitclaimed his interest in the property to "Daniel W. Golden, trustee of the Daniel W. Golden living Trust" on February 14, 2007. RJN Ex. B. Defendants argue that the Daniel W. Golden living Trust is an indispensable party to this action, since it holds title to the property, and that its absence warrants dismissal. A similar argument was rejected by the district court in a foreclosure action presenting similar facts. See <u>Aguirre v. Cal-Western Reconveyance Corp.</u>, No. CV 11-6911 CAS (AGRx), 2012 WL 273753, at *4 (C.D. Cal. Jan. 30, 2012) (holding an individual plaintiff had standing to proceed with a foreclosure relief action, although defendants argued he had transferred the property to a trust and thus "no longer owned the property," because he was trustee of the trust and thus was a real party in interest "with standing to sue and defend on the trust's behalf"). Since the Court dismisses the FAC under Rule 12(b)(6), it need not and does not reach the merits of Defendants' motion under Rule 12(b)(7).

A. <u>First Cause of Action for Declaratory Relief and Second Cause of Action for Wrongful Foreclosure</u>

Plaintiff's first cause of action for declaratory relief is based on the contention that the foreclosure was invalid due to alleged defects in the securitization of the loan, assignment of the DOT, and substitution of trustee. Plaintiff seeks a judicial declaration that as a result of these defects, neither Chase nor U.S. Bank acquired an enforceable interest in the property. FAC ¶¶ 1-6. His second cause of action for wrongful foreclosure similarly relies on the claim that the foreclosure was invalid because it was based on "fraudulent foreclosure documents." <u>Id.</u> ¶¶ 7-12.

Both causes of action fail because they rely on flawed theories regarding alleged defects in the transfers of interest that led to the foreclosure. First, Plaintiff contends that the assignment of the DOT to U.S. Bank violated the terms of the PSA for the 2007-S2 Trust, including because it occurred on September 5, 2012, after the closing date of May 30, 2007, and because U.S. Bank allegedly failed to deposit the endorsed promissory note, original DOT, and an assignment of the Note with the trust's custodian of records. In <u>Yvanova v. New Century Mortg. Corp.</u>, 62 Cal. 4th 919 (2016), the California Supreme Court held that borrowers challenging an assignment of interest to the foreclosing entity lack standing to raise issues that would render the assignment voidable, but may assert challenges that, if successful, would render the assignment void. 62 Cal. 4th at 939, 942-43. Post-<u>Yvanova</u>, courts have held that challenges based on alleged defects in securitization of a loan to a pooled trust, including allegations that the transfers violated the terms of applicable pooling and service agreements, are voidable defects. <u>In re Turner</u>, 859 F.3d 1145, 1149 (9th Cir. 2017). Accordingly, Plaintiff lacks standing to challenge the assignment of the DOT to U.S. Bank on the ground it violated the PSA for the 2007-S2 Trust.

Next, Plaintiff alleges that the assignment of the DOT to U.S. Bank was invalid because it was accomplished without a corresponding assignment of the

Note to U.S. Bank. Even assuming that Plaintiff's contention is correct and unilateral assignment of the DOT without the Note is a defect that voids the assignment of the DOT, Plaintiff's theory is implausible. His contention that the Note was never transferred to U.S. Bank is based on the lack of a recorded Assignment of Note in the San Diego County Recorder's Office. As Defendants point out, however, assignments of loans are commonly not recorded, and courts have rejected challenges to foreclosures based on the alleged absence of a recorded assignment of the note. Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 272 (2011) (disapproved on other grounds by Yvanova, 62 Cal.4th at 937) (affirming trial court order sustaining demurrer where Plaintiff alleged an assignment of a DOT was made without corresponding assignment of the note, because "[p]laintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded"); Parcray v. Shea Mortg., Inc., No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, *11 (E.D. Cal., Apr. 23, 2010) (rejecting Plaintiff's claim that the foreclosure sale was void because "there is no recorded assignment evidencing the transfer of the loan" because "[t]here is no requirement under California law for an assignment to be recorded in order for an assignee beneficiary to foreclose"). To the extent Plaintiff alleges the Note was simply never sold or transferred to U.S. Bank at all, his theory is too speculative to be plausible. Twombly, 550 U.S. at 555. Plaintiff's fallback position, that the Note was transferred to U.S. Bank, but the transfer occurred on September 5, 2012, after closing date for the 2007-S2 Trust, is an alleged violation of the PSA, a voidable defect that Plaintiff lacks standing to assert.

Plaintiff also challenges the validity of the Substitution of Trustee that substituted The Wolf Law Firm in place of First American Title Insurance Company as the trustee under the DOT. Most of his challenges, however, are based on the allegation that U.S. Bank was incapable of making the substitution, which, in turn,

relies on the same flawed theories regarding defects in the assignment of the DOT. To the extent Plaintiff objects that the substitution was signed by SPS as U.S. Bank's "servicing agent and attorney in fact" rather than by U.S. Bank itself, such a theory does not justify relief. Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 232 (2011) (rejecting plaintiff's foreclosure challenge based on the fact that the substitution of trustee was signed by the bank's attorney-in-fact because "[n]either Civil Code section 2934a, which governs the substitution of trustees, nor the trust deed itself precludes an attorney-in-fact from signing a Substitution of Trustee").

In sum, Plaintiff has not alleged an actionable flaw in the process leading to the foreclosure sale of his property. Because Plaintiff's causes of action for declaratory relief and wrongful foreclosure rely on these flawed theories, they will be dismissed for failure to state a claim.

### B. Third Cause of Action for Violation of 15 U.S.C. § 1692e

Plaintiff's third cause of action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff alleges SPS violated this provision by fraudulently representing to him that U.S. Bank held the beneficial interest on his Note, when in fact, in his view, the Note was never transferred to U.S. Bank. FAC ¶¶ 17, 19-23. Because this claim sounds in fraud, the heightened pleading standards of Rule 9(b) apply. See Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Rule 9(b) pleading standards apply where a claim is "grounded in fraud" or "sounds in fraud"). For the reasons discussed above, Plaintiff's allegation that the Note was never transferred to U.S. Bank is speculative and implausible and fails to meet the pleading requirements of Twombly and Iqbal, much less the heightened pleading standard for fraud. Twombly, 550 U.S. at 555. Accordingly, this claim will also be dismissed for failure to state a claim.

//

10

16-cv-1209-BTM(JMA)

C. <u>Fourth Cause of Action for Violation of 15 U.S.C. § 1641(g)</u>

Effective May 20, 2009, the Truth in Lending Act ("TILA") was amended to add a requirement that purchasers of a mortgage loan must notify the borrower in writing of the transfer no later than 30 days after the loan is assigned. <u>See</u> 15 U.S.C. § 1641(g). Plaintiff's fourth cause of action is based on the allegation that if his Note was transferred to U.S. Bank, the transfer must have occurred on September 5, 2012, and U.S. Bank therefore violated § 1641(g) by failing to send him written notice. FAC ¶ 32.

Defendants argue that this claim should be dismissed for violation of the statute of limitations. A claim barred by the statute of limitations may be dismissed under Rule 12(b)(6) where the running of the statute is apparent on the face of the complaint. <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 997 (9th Cir. 2006). Claims under § 1641(g) are subject to the one-year limitations period in 15 U.S.C. § 1640(e). <u>McQuinn v. Bank of America, N.A.</u>, 656 Fed. Appx. 848, 849 (9th Cir. 2016) (mem. dispo.) "[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but … the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." <u>King v. State of Cal.</u>, 784 F.2d 910, 915 (9th Cir. 1986). Plaintiff alleges the transfer occurred on September 5, 2012, but he did not file this action until May 19, 2016. Although TILA claims are subject to equitable tolling, Plaintiff has not alleged facts showing he did not learn about the transfer until within a year of filing the complaint. Accordingly, this claim will also be dismissed pursuant to Rule 12(b)(6).

D. <u>Ninth Cause of Action for Breach of Contract and Tenth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff's ninth and tenth claims for relief rely on an alternative theory, which is that if the Court finds that the assignment of the DOT to U.S. Bank was valid,

then U.S. Bank and SPS breached both the DOT and the implied covenant of good faith and fair dealing by improperly crediting his periodic loan payments.

These claims, too, are insufficiently pled. First, plaintiff's performance under the contract is a required element for a claim for breach of contract. <u>Careau & Co. v. Security Pacific Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1389 (1990) ("Where contractual liability depends upon the satisfaction or performance of one or more conditions precedent, the allegation of such satisfaction or performance is an essential part of the cause of action."). Not only does Plaintiff fail to allege he performed his duties under the DOT, but he admits non-performance when he alleges he fell behind on his loan payments, and he fails to dispel this state of non-performance by, for example, alleging that he cured or even offered to cure his default under the terms of the DOT. Second, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing falls short of the applicable pleading standard. Plaintiff alleges that "Defendants fraudulently concealed the fact that they were not applying payments in accordance with the [DOT]" and "concealed the improperly applied mortgage payments, the incorrect calculation of interest, and the improper fees…." FAC ¶ 84. His claim thus sounds in fraud and must satisfy the pleading requirements of Rule 9(b). <u>Vess</u>, 317 F.3d at 1103-04. However, his allegations are speculative and fall far short of the heightened standard for fraud.

Therefore, both causes of action will be dismissed for failure to state a claim.

### E. <u>Remaining Causes of Action</u>

Plaintiff's remaining causes of action for "quasi contract," negligence, violation of Cal. Bus. & Prof. Code § 17200, to quiet title, for accounting, and violation of Cal. Civ. Code §§ 2924.17 and 2924(a)(6), are based on the same alleged defects in assignment of the DOT and substitution of trustee discussed above. Because none of the allegations regarding these purported defects state a plausible claim for relief, Plaintiff's remaining causes of action likewise fail to

state a claim and will therefore be dismissed.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS the motion to dismiss as to Defendants U.S. Bank, SPS, and JPMorgan Chase. The motion to strike is DENIED AS MOOT.

Plaintiff is granted leave to amend. Any amended complaint must be filed no later than September 15, 2017.

The Court notes that AMN defaulted on the original complaint on September 6, 2016. Pursuant to Local Civil Rule 55.1, plaintiffs are required to move for default judgment within thirty (30) days of the entry of a default, or an order to show cause will be issued why the complaint against the defaulted party should not be dismissed. CivLR 55.1. An order to show cause why AMN should not be dismissed will be issued separately.

IT IS SO ORDERED:

Dated: August 18, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court